TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

THOMAS PORTS JR.
LEILANI DOKTOR
Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 305-0492
Fax: (202) 305-0506
thomas.ports.jr@usdoj.gov
leilani.doktor@usdoj.gov
*Attorneys for Federal Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:21-cv-00221 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant, | ) ) ) ) ) ) | |

### DEFENDANT'S MOTION TO DISMISS

DEFENDANT'S MOTION TO DISMISS
*Alaska v. U.S., et al.*, No. 3:21-cv-00221                                                                                         1

# INTRODUCTION

The State of Alaska ("the State") has sued the United States of America seeking to quiet title to certain submerged lands underlying three rivers in northwest, Alaska. The State alleges that in the townships named in its Complaint, ECF No. 9, Amended Complaint ¶ 13-15 ("Compl."), the Middle Fork Koyukuk, Bettles, and Dietrich Rivers ("the Subject Waters") were navigable at the time of statehood and thus, property of the State. As pled, however, the Amended Complaint must be dismissed for four reasons.

First, the State's claims as to the Bettles River are unavailing because there is no "disputed title" between the United States and the State, and thus there is no basis for invoking the Federal Quiet Title Act's waiver of sovereign immunity. Second, the Indian lands exception of the Quiet Title Act bars jurisdiction over the submerged lands that form the meander line of two Native allotments. Third, the State's first claim for relief should be denied because the Declaratory Judgment Act does not waive the United States' sovereign immunity and cannot serve as an alternate avenue for quieting title to real property vis-à-vis the United States. Fourth and finally, the State has failed to sufficiently plead facts consistent with the requirements of the Federal Rules of Civil Procedure. The State's claims, therefore, must dismissed until it alleges facts sufficient to satisfy the Quite Title Act's pleading requirements and the Federal Rules of Civil Procedure.

# FACTUAL BACKGROUND

## I.  The Rivers Claimed by the State

Three remote Alaskan rivers are at issue, the Middle Fork of the Koyukuk, the

Dietrich, and the Bettles. Compl. ¶ 1. The Koyukuk River is an approximately 425-mile-long tributary of the Yukon River. Compl. ¶ 13. With headwaters above the Arctic Circle in the Endicott Mountains of the Brooks Range, the Koyukuk River flows generally southwest to meet the Yukon River at the Village of Koyukuk. Compl. ¶ 13.

The Dietrich River is an approximately thirty-five-mile-long tributary of the Middle Fork of the Koyukuk River. *Id.* The portion of the Dietrich River that constitutes the subject matter of this action runs from its confluence with Nutirwik Creek downstream to its confluence with the Bettles River. Compl. ¶ 15. The Bettles River is an approximately seventeen-mile-long tributary of the Middle Fork of the Koyukuk River. *Id.* The portion of the Bettles River that constitutes the subject matter of this action runs from the east township line of T. 32 N., R. 10 W., F.M., downstream to its confluence with the Dietrich River. Compl. ¶ 14. The portion of the Middle Fork of the Koyukuk River that constitutes the subject matter of this action runs from its source at the confluence of the Bettles and Dietrich Rivers downstream to its confluence with the Hammond River. *Id.*

The State notified the BLM of its intent to sue on August 24, 2018. Compl. ¶ 6. The State originally filed its Complaint in October 2021, ECF No. 1, and then filed an amended Complaint on February 4, 2022. ECF No. 9.

The Complaint alleges that on March 16, 2011, the BLM branch chief for the Branch of Planning and Preparation in the Alaska State Office of the BLM sent the acting manager of BLM's Central Yukon Field Office a memorandum finding that the Middle Fork of the Koyukuk River was nonnavigable in townships 32 and 33 North, range 10 West of the

Fairbanks meridian. Ex. 2, March 16, 2011 BLM Internal Navigability Memorandum ("2011 Memo"). This internal BLM memorandum is the sole basis upon which the State alleges the United States has claimed title to the portions of all three rivers covered in the Amended Complaint. Compl. ¶ 24.

## II. The Alaska Native Allotments Located on the Rivers Claimed by the State

### a. The Etalook Allotment

In August 1975, the United States issued a patent to Arctic John Etalook for an allotment under the Alaska Native Allotment Act[1] located on the Middle Fork Koyukuk River ("The Etalook Allotment"). Ex. 3, August 22, 1975 Etalook Allotment Certificate. The Allotment is surveyed in two lots, with one lot of approximately 32 acres on the North side of the river and another lot of nearly 130 acres on the South side of the river. Ex. 4, April 25, 1975 BLM US Survey 5199 Etalook Allotment. BLM meandered the river shore in order to survey the allotment.[2] *Id*. The allotment remains held subject to a restriction on

---

[1] The Alaska Native Allotment Act of 1906 allowed Alaska Natives "to perfect their title to the land occupied and used by them." *Aguilar v. United States*, 474 F. Supp. 840, 842 (D. Alaska 1979); *see* Act of May 17, 1906, Pub. L. No. 59-171, 34 Stat. 197. The Act authorized Alaska Native individuals to apply for up to 160 acres of land from the public domain. *Id*. Individuals could obtain title to lands they had used for traditional purposes in up to four different 40 acre lots. *Id*. Once an individual established their entitlement to an allotment, BLM issued a patent to the individual subject to a restriction on alienation. *Id*. The restriction means an allotment cannot be sold, mortgaged, or otherwise encumbered without the consent of the United States. *Id*. Such "restricted fee" allotments are treated the same as lands held in trust for most intents and purposes. *Id*.

[2] "Meandering" of water bodies occurs "where a water-course is the external boundary" of a plot of land that a surveyor needs to determine the contents for a land conveyance. *St Paul & Pac. R Co. v. Schurmeier*, 74 U.S. 272, 273 (1868) "The line showing the place of the water-course, and its sinuosities, courses, and distances, is called the 'meander-line,'" which

alienation. Ex. 5, Public Title Report 989 F-18270 Arctic John Etalook.

### b. The Harwood Allotment

In June 2003, BLM issued a patent to Theodore C. Harwood for an allotment on the Dietrich River. Ex. 6, June 6, 2003 Harwood Allotment Certificate. The allotment consists of approximately 30 acres located on the East side of the Dietrich River. *Id.* As with the Etalook allotment, BLM meandered the shore of the Dietrich River when it surveyed the allotment. Ex. 7, January 5, 2001 BLM US Survey 11859 Harwood Allotment. The allotment remains held subject to a restriction on alienation. Ex. 8, Public Title Record 989 F-18133B Theodore C. Harwood

## LEGAL BACKGROUND

### I. Quiet Title Act

The United States cannot be sued absent a waiver of sovereign immunity. *Mills v. United States*, 742 F.3d 400, 404-05 (9th Cir. 2014); *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 280 (1983); *Kane Cty. v. United States* ("*Kane 1*"), 772 F.3d 1205, 1210 (10th Cir. 2014). A waiver of sovereign immunity "cannot be implied, but must be unequivocally expressed." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) (citation omitted); *United States v. King*, 395 U.S. 1, 4 (1969). The Quiet Title Act provides

---

is *not* the legal boundary of the property. *Id.* "[L]and submerged beneath the meandered water body, . . . is excluded in determining the entitlement," of a grantee receiving land from the federal government. *Wilderness Soc. v. Carruthers*, 1986 WL 15757, at *1 (D.D.C. Jan. 30, 1986).

such a waiver:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a *disputed title* to real property in which the United States *claims an interest*.

28 U.S.C. § 2409a(a) (emphasis added); *Kane 1*, 772 F.3d at 1210. Indeed, the Quiet Title Act is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Kane 1*, 772 F.3d at 1210 (citation omitted); *Block*, 461 U.S. at 286; *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999) (citation omitted).

As with all waivers of sovereign immunity, the Quiet Title Act is strictly construed in favor of the United States. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992); *Humboldt Cty. v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982). The Act's waiver of sovereign immunity is expressly limited by a number of specific conditions. These require the plaintiff to identify a "disputed title to real property" and that the complaint "set forth with particularity": (1) the "nature of the right, title or interest which the plaintiff claims in the real property," (2) "the circumstances under which it was acquired," and (3) the "right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(a), (d). The Quiet Title Act's waiver of sovereign immunity "does not apply to trust or other restricted Indian lands." *Alaska v. Babbitt*, 182 F.3d 672, 675 (9th Cir. 1999). For a court to have jurisdiction over a Quiet Title Act claim, the plaintiff must establish that title to the property is "disputed." *Mills*, 742 F.3d at 405; *see also Kane 1*, 772 F.3d at 1210.

## II. Navigability for Title

Upon statehood, a state gains title to the beds of inland waters then navigable within its borders. *See PPL Montana, LLC. v. Montana*, 565 U.S. 576, 589-91 (2012). The test for title navigability was first set forth by the U.S. Supreme Court in 1871, when it held a waterway is navigable if, in its ordinary condition at statehood, the river was either actually used or susceptible to use as a highway of commerce:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade or travel on water.

*The Daniel Ball,* 10 Wall. 557, 563 (1871). To meet this test, evidence a waterway was actually used for navigation, especially extensive and continuous use for commercial purposes, "may be most persuasive," but when "conditions of exploration and settlement explain the infrequency or limited nature of such use," the susceptibility for use as a highway of commerce may still constitute satisfactory evidence of navigability. *United States v. Utah*, 283 U.S. 64, 82 (1931).

Navigability for title "concerns the river's usefulness for 'trade and travel,' rather than for other purposes." *PPL Montana, LLC*, 565 U.S. at 600. Courts may consider evidence of present-day travel to determine a river is navigable, but "(1) the watercraft must be meaningfully similar to those in customary use for trade and travel at the time of statehood, and (2) the river's poststatehood condition may not be materially different from its physical condition at statehood." *Id.* at 601.

It is well settled that courts can consider "segments" of rivers and determine whether each segment is navigable. *Id.* at 594-96. "Physical conditions that affect navigability often vary significantly over the length of a river . . . [S]hifts in physical conditions provide a means to determine appropriate start points and end points for the segment in question. Topographical and geographical indicators may assist." *Id.*

The Submerged Lands Act recognizes and confirms states' "title to and ownership of the lands beneath navigable waters," and "the natural resources within such lands and waters." 43 U.S.C. § 1311(a). The Alaska Statehood Act applied the Submerged Lands Act to the State of Alaska. Pub. L. No. 85-508, § 6(m), 72 Stat. 339, 343 (July 7, 1958). Alaska became a state on January 3, 1959 and would thus only acquire title to submerged lands underlying waters that were navigable as of that date. *Alaska v. United States*, 201 F.3d 1154, 1156 (9th Cir. 2000) ("*Black River*"); *see also State of Alaska v. Ahtna, Inc.*, 891 F.2d 1401 (9th Cir. 1989).

If a river was not navigable at statehood, then title to the submerged lands follows State property law, which, in the case here, would mean those submerged lands remain federal lands, including Indian lands. 43 U.S.C. §§ 1301–1315.

## LEGAL STANDARD

### III. The 12(b)(1) Standard

A party may move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and such motions are an appropriate vehicle for seeking dismissal on sovereign immunity grounds. *Morkal v. Hawks*, No. 3:12-CV-00218 RRB, 2015 WL

6159335, at *2 (D. Alaska Oct. 19, 2015). Faced with a Rule 12(b)(1) motion, the non-movant plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenging party asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### IV. The 12(b)(6) Standard

A suit must be dismissed if the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a Rule 12(b)(6) motion, the Court must accept all material factual allegations as true and draw any reasonable inferences in the non-moving party's favor. *Id.* However, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the

elements of a cause of action." *Id.* at 658 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

The State's Quiet Title claim (Count 2) should be dismissed as to the Subject Waters of the Bettles River because the Complaint fails to allege that the United States has disputed Alaska's claim of interest in that river segment—a prerequisite to jurisdiction under the Quiet Title Act. *See* 28 U.S.C. § 2409a(a), (d). This pleading deficiency is dispositive both under the Rule 12(b)(6) pleading standard articulated in *Iqbal*, 556 U.S. at 678, and under the Quiet Title Act's requirement that a dispute be pled with particularity. 28 U.S.C. § 2409a(a), (d). The State's Second Claim also fails as to the Subject Waters adjacent to two Native Allotments because the Indian lands exception of the Quiet Title Act bars jurisdiction over those submerged lands. *See* 28 USC § 2409a(a). Finally, the State's First Claim (Count 1) should be denied because the Declaratory Judgment Act does not waive the United States' sovereign immunity; rather, the Quiet Title Act provides the sole means by which a litigant may determine title to real property vis-à-vis the United States. Alaska, therefore, must satisfy the Quiet Title Act's pleading requirements, and may not circumvent those requirements by asserting an alternative claim for declaratory relief.

The United States does not oppose leave to amend the complaint.

### I. There must be "disputed title" to establish jurisdiction under the Quiet Title Act.

The Quiet Title Act operates as a waiver of the United States' sovereign immunity and provides a right of action for certain suits, but the conditions for that waiver must be strictly observed. *Block,* 461 U.S. at 287. Among these limitations is the requirement that a

plaintiff show that the United States has disputed title to the claimed property through express or implicit action. *Mills*, 742 F.3d at 405 (citation omitted); *see also Kane 1*, 772 F.3d at 1212 (holding "that to satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it"). The requirement that this condition is met is neither discretionary nor flexible because the terms of the waiver of sovereign immunity in the Quiet Title Act limit the scope of this Court's jurisdiction and must be construed strictly in the government's favor. *United States v. Mottaz*, 476 U.S. 834 at 841 (1986); *Block*, 461 U.S. at 287.

In this case, the State cites only one document that it claims establishes a disputed title—a March 16, 2011 Internal BLM Memorandum on the Navigable Waters of the Middle Fork Koyukuk River ("2011 Memo"). Ex. 2. The BLM in that Memo determined that the Middle Fork of the Koyukuk River is nonnavigable upstream of the Hammond River. *Id.* While the 2011 Memo does mention that the Bettles River in T. 32 N., R. 8 W., F.M. was "considered" nonnavigable, that section of the river is not claimed by the State here and the 2011 Memo does not make a navigability determination for the Bettles River. *Id.* In fact, the 2011 Memo does not address the segment of the Bettles at issue here. Thus, the 2011 Memo cannot establish a dispute of title sufficient for jurisdiction under the Quiet Title Act. *Id.*

Naturally, a title is not "disputed" by the United States within the meaning of 28 U.S.C. 2409a(d) if the United States has never disputed it. *Id.* As the Ninth Circuit

delineated in the *Black River* decision concerning the Kandik, Nation, and Black Rivers, the United States must assert that a river was nonnavigable at statehood to establish jurisdiction under the Quiet Title Act. *Alaska v. United States*, 201 F.3d 1154 at 1157, 1163 (9th Cir. 2000). Following litigation over a conveyance from the United States to a Native Corporation, the BLM in many forums claimed the Kandik and Nation rivers as nonnavigable. *Alaska*, 201 F.3d at 1157; *see also Appeal of Doyon, Limited*, 86 ID 692, 694 (1979). These navigability determinations confirmed that there was a live controversy between the United States and Alaska sufficient for jurisdiction over the Kandik and Nation Rivers under the Quiet Title Act. *Id.* at 1163. For the Black River, the Court came to the opposite conclusion. There, the court noted that the United States had never expressly taken the position the river was nonnavigable, and concluded on that basis that there was no claim and no dispute. *Id.* at 1165. The State's Complaint suffers from a similar defect here and because there is no express dispute this Court, like the court in *Black River*, should dismiss the State's claim.

Because the 2011 Memo does not address the segment of the Bettles to which the State has sued, the State cannot rely on it to satisfy the Quiet Title Act's requirement that Alaska allege an express assertion of disputed title on the part of the United States. The segment-by-segment approach to navigability affirmed in *PPL Montana, LLC v. Montana* establishes that physical conditions that affect navigability often vary significantly over the length of a river. 565 U.S. 576, 594 (2012). Thus, an upstream finding of nonnavigability does not necessarily imply a waterbody is nonnavigable downstream from that point. In the

2011 Memo, BLM does not make a navigability finding as to any part of the Bettles River, but states only that a portion of it was "considered to be nonnavigable" in townships T. 32 N., R. 8 W., F.M., and T. 32 N., R. 9 W., F.M., Ex. 2 at 3. Both of those townships are upstream of the segment sought by the State here. This does not conflict with or bear on Alaska's claim of interest in title over the Subject Waters of the Bettles River. Alaska alleges no facts that could plausibly show otherwise.

In sum, Alaska asks the Court to infer a disputed title, and thus infer a waiver of sovereign immunity, because the BLM found a different segment of a different river nonnavigable and also found an upstream segment of the Bettles River nonnavigalbe. Waiver of sovereign immunity cannot be inferred. Accordingly, Alaska has failed to satisfy the Quiet Title Act's "disputed title" requirement with respect to the Subject Waters of the Bettle River, and that portion of its Second Claim must be dismissed.

## II. Under the Quiet Title Act's Indian lands exception, this Court lacks jurisdiction over the submerged lands at issue that adjoin two Alaska Native allotments.

This Court should also dismiss the State's claims for the submerged lands located adjacent to or within two Alaska Native allotments for a lack of jurisdiction under the Quiet Title Act. The Quiet Title Act's Indian lands exception does not waive—and thus maintains—the United States' sovereign immunity where there is a "colorable claim" that a plaintiff seeks title to property that is "trust or restricted Indian land." *See* 28 USC § 2409a(a); *United States v. Mottaz*, 476 U.S. 834, 843 (1986); *Alaska v. Babbitt (Albert)*, 38 F.3d 1068, 1072–73 (9th Cir. 1994). Because the Etalook and Harwood Allotments are

DEFENDANT'S MOTION TO DISMISS
*Alaska v. U.S., et al.*, No. 3:21-cv-00221                                                                                                                  13

Case 3:21-cv-00221-SLG   Document 11   Filed 02/18/22   Page 13 of 20

located next to rivers that may be nonnavigable, there is a colorable claim that the submerged lands adjacent are "restricted Indian lands" that are not justiciable under the Quiet Title Act.

"The Q[uiet] T[itle] A[ct]'s limitations on actions challenging the United States' assertions of title [to trust or restricted Indian lands] apply without regard to the ultimate validity of those assertions." *Alaska v. Babbitt (Foster)*, 75 F.3d 449, 452 (9th Cir. 1996). Rather, the Indian lands exception applies whenever there is a "colorable" claim that the lands at issue are trust or restricted Indian lands. *Id.*; *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987). The government's assertion that a particular parcel is Indian land is colorable so long as it is not "undertaken in either an arbitrary or frivolous manner," and the government has "some rationale" for the assertion. *Bryant*, 182 F.3d at 675 (quoting *Albert*, 38 F.3d 1068). The United States "cannot be put to its proof when it has a colorable claim that it holds the land in trust for Indians." *Id*. (quoting *Wildman*, 827 F.2d at 1309 (quotations omitted)). The Ninth Circuit has repeatedly held the Indian lands exception to the Quiet Title Act applies to Alaska Native allotments. *Albert*, 38 F.3d 1068; *Alaska Dep't of Nat. Res. v. United States*, 816 F.3d 580, 585 (9th Cir. 2016); *see also Shade v. U.S. Dep't of the Interior*, No. 3:20-CV-0198-HRH, 2021 WL 4234928, at *3 (D. Alaska Sept. 16, 2021).

There is a colorable claim that the submerged lands adjacent to the Etalook and Harwood Allotments are "trust or restricted Indian lands" owned by the allottees, because the rivers may be non-navigable. BLM "meandered" the rivers running through the

DEFENDANT'S MOTION TO DISMISS
*Alaska v. U.S., et al.*, No. 3:21-cv-00221                                                                                                                  14

allotments and referred to the meander-line when it surveyed and issued those allotments. Meandering of water bodies occurs "where a water-course is the external boundary" of a plot of land that a surveyor needs to determine the contents for a land conveyance. *St Paul & Pac. R Co. v. Schurmeier*, 74 U.S. 272, 273 (1868). "The line showing the place of the water-course, and its sinuosities, courses, and distances, is called the 'meander-line,'" which is *not* the legal boundary of the property. *Id.*; *see also* Ex. 9, BLM's 1973 Survey Manual (providing that a meander line is used in place of a lot boundary at the waterline for purposes of calculating the acreage of a lot *even though it does not actually constitute the legal boundary of the lot*). Rather, under both federal and state law the riparian owner adjacent to a nonnavigable waterway takes title to the submerged lands as far as the center of the waterway. *See United States v. Otley*, 127 F.2d 988, 995 (9th Cir. 1942); *Bentley Fam. Tr., Bank of Cal. v. Lynx Enters., Inc.*, 658 P.2d 761, 763 (Alaska 1983) *and* Alaska Stat. § 09.25.040(4) (2022) ("[W]hen a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or bed of the stream is held under another title[.]").

Although BLM has not made a formal navigability determination for the portions of the rivers adjacent to the allotments, Declaration of Paul Krabacher ¶ 12, the State asserts that the United States has disputed the State's claim to title. Assuming this is true, then the United States would be doing so on the basis that the submerged lands are Indian lands, excepted from the Quiet Title Act's waiver of sovereign immunity. The alternative

situation, that the United States has not disputed the State's title claim, would still not yield a waiver of sovereign immunity under the Quiet Title Act.

Because the Etalook and Harwood allotments are located on rivers that may be nonnavigable, there is a colorable claim that the submerged lands adjacent to those allotments are Indian lands according to state and federal riparian property law. The submerged lands adjacent to the allotments are thus qualifying property under the Indian lands exception of the Quiet Title Act and the claims to those lands should be dismissed.

### III. Plaintiffs May Not Evade The Strictures Of The Quiet Title Act By Seeking Review Of Their Quiet Title Action Under Some Other Statute

The State's First Claim as to the Subject Waters of the Bettles River and lands adjoining the two Native Allotments, asserted under the Declaratory Judgment Act, must also be dismissed because they do not cure State's inability to assert a claim under the Quiet Title Act. The Ninth Circuit has long held that the Declaratory Judgment Act does not effect a waiver of the United States' sovereign immunity. *See Alaska Dep't of Nat. Res.*, 816 F.3d at 586 (rejecting state's attempt to use the Declaratory Judgment Act as an "end run" around the Quiet Title Act)*; People of the State of Cal. ex rel. Cal. Dep't of Fish & Game v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979). So, without jurisdiction pursuant to the Quiet Title Act, the State's first claim fails because the Quiet Title Act "provides the only means by which to challenge federal ownership of real property." *Cnty. of Shoshone of Idaho v. United States*, 912 F. Supp. 2d 912, 943 (D. Idaho 2012) (citation omitted); *see also Block*, 461 U.S. at 286 ("Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real

property."); *Alaska Dep't of Nat. Res.*, 816 F.3d at 586 ("the Declaratory Judgment Act may not be used as an end run around the QTA's limited waiver of sovereign immunity." (citation omitted)); *Albert*, 38 F.3d at 1073 ("when the United States has an interest in the disputed property the waiver of sovereign immunity must be found, if at all, within the QTA."). As the State's First Claim is only brought under the Declaratory Judgment Act, it cannot "by itself confer federal subject-matter jurisdiction." *Nationwide Mut. Ins. Co. v. Liberatore,* 408 F.3d 1158, 1161 (9th Cir. 2005). Thus, the State has failed to prove jurisdiction over the Subject Waters of the Bettles River and land adjoining the two Native allotments for both its claims and the claims should be dismissed.

## IV. Plaintiffs should be required to plead facts, consistent with the requirements of the Federal Rules of Civil Procedure

Plaintiff's Amended Complaint should be dismissed in full, with leave to re-plead, because its allegations on the merits consists of only conclusory statements and legal conclusions. The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Regarding the navigability of the subject waters, the State alleges, in full:

> The Subject Waters were navigable-in-fact as they were used or were susceptible of being used in their ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel, including, but not limited to, the following specific uses: (a) in its fluid capacity as a highway—floating of logs, use by wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes providing transportation for individuals and supplies, for subsistence and recreational guided and non-guided hunting and fishing activities, for trapping, mining and prospecting, freighting and similar purposes, related to commerce and travel; and (b) any other additional uses the State proves at

trial.

Compl. ¶ 26. Although the State purports to identify potential "specific uses" the allegations do not go beyond "mere conclusions." For example, consider the allegation that a river was "used or [was] susceptible of being used . . . in its fluid capacity as a highway…[for] use by… power boats" Plaintiffs do not allege any river was actually used by power boats.[3] They do not allege which river, or which segment of which river was used by power boats. They do not allege when or how often the river was used by power boats. And—if they intend to prove susceptibility rather than actual use—they do not allege any facts that lead them to conclude this is plausible. As pled, Plaintiffs' Amended Complaint should be dismissed, with instructions to re-plead with *facts* sufficient to state a plausible claim.

## CONCLUSION

The State has failed to bear its burden to prove this Court's subject matter jurisdiction and failed to allege facts sufficient to state a plausible claim. Therefore, the Court should dismiss the portion of the claims identified here of Plaintiffs' Complaint, without prejudice, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: February 18, 2022

Respectfully Submitted,

*/s/ Leilani Doktor*
Thomas W. Ports, Jr.
Leilani Doktor

---

[3] Moreover, the State must show that any post-statehood uses were by craft that were "meaningfully similar" to craft available at statehood. *PPL Montana, LLC. v. Montana*, 565 U.S. 576, 591 (2012).

DEFENDANT'S MOTION TO DISMISS
*Alaska v. U.S., et al.*, No. 3:21-cv-00221                                                                 18

                      Trial Attorney
                      150 M Street, N.E.
                      Washington, D.C. 20002
                      Tel: (202) 305-0492
                      Fax: (202) 305-0506
                      thomas.ports.jr@usdoj.gov
                      leilani.doktor@usdoj.gov

# TABLE OF EXHIBITS

| EXHIBIT No. | DOCUMENT |
|---|---|
| 1 | Declaration of Paul Krabacher |
| 2 | March 16, 2011 Internal BLM Navigability Memorandum ("2011 Memo") |
| 3 | August 22, 1975 Etalook Allotment Certificate |
| 4 | April 25, 1975 BLM US Survey 5199 Etalook Allotment |
| 5 | Public Title Report, 989 F-18270, Arctic John Etalook |
| 6 | June 6, 2003 Harwood Allotment Certificate |
| 7 | January 5, 2001 BLM US Survey 11859 Harwood Allotment |
| 8 | Public Title Record, 989 F-18133B, Theodore C. Harwood |
| 9 | BLM 1973 Survey Manual of Instructions [excerpted] |