TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email:  ron.opsahl@alaska.gov

Attorney for the State of Alaska

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No: 3:21-cv-00221-SLG<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## <u>INTRODUCTION</u>

"[A] state entitled as of 1959 to all the incidents of ownership in its rivers, yet still deprived of clear title [sixty three] years later, is effectively deprived of what it is entitled to under the equal footing doctrine." *Alaska v. United States*, 201 F.3d 1154, 1161 (9th Cir. 2000) (*Kandik, Nation, & Black Rivers*). With this case, the State of Alaska ("State") continues its sixty-three-year-long quest to have ownership of the State's submerged lands recognized and federal clouds-on-title lifted. After all, the State "ought

to be able to manage its property knowing what is its property." *Id.* at 1165. However, with this case, the United States also continues its decades-long practice of "playing dog in the manger."[1]

In the twenty-two years since the Ninth Circuit affirmed State ownership of the Kandik and Nation Rivers, the United States has continued its campaign of inaction, ignoring administrative requests for navigability determinations, and then frequently disclaiming any interest only after the State resorted to costly litigation. For example, in *Alaska v. United States*, Case No. 3:12-cv-0144-SLG (D. Alaska, filed June 1, 2012) (*Mosquito Fork of the Fortymile River*), the State filed suit to quiet title to the Mosquito Fork of the Fortymile River. On July 27, 2015, the eve of summary judgment argument, the United States disclaimed ownership.[2] In *Alaska v. United States*, Case No. 3:15-cv-0226-RRB (D. Alaska, filed Nov. 20, 2015) (*Stikine River*), the State was forced to initiate action to assert its ownership to the submerged lands below the Stikine River after an eleven-year administrative process in which the United States failed to acknowledge State ownership. The United States disclaimed any interest on June 17, 2016. In *Alaska v. United States*, Case No. 3:17-cv-0090-HRH (D. Alaska, filed Apr. 19, 2017) (*Knik*

---

[1] More than twenty years ago, District Court Judge Singleton characterized the United States as "playing dog in the manger" by refusing to admit or deny the navigability of the Black River. *Kandik, Nation, & Black Rivers*, 201 F.3d at 1159 "That refers to a dog that finds food for chickens and ducks in a manger, does not eat it, but keeps the ducks and chickens out so that they cannot eat the food to which they are entitled." *Id.*

[2] In that case, the United States was also found to be acting in bad faith in its defense of the litigation, resulting in the award of attorneys' fees to the State four years after initiating the lawsuit. *Alaska v. United States*, 2016 WL 1948801 (D. Alaska 2016).

*State of Alaska v. United States*                                   Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss               Page 2 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 2 of 22

*River*), the United States again failed to acknowledge State submerged lands, and the State filed suit to quiet title to the bed of the Knik River. The United States disclaimed any interest on September 5, 2017.

In an attempt to avoid the expense of litigation, the State has also employed an alternative to suits to quiet title created by Section 315 of the Federal Land Policy and Management Act ("FLPMA"). Section 315 authorizes the Bureau of Land Management ("BLM") to issue a "recordable disclaimer of interest" ("RDI") when it determines that a record interest of the United States in lands has terminated by law or is otherwise invalid. 43 U.S.C. § 1745. Although the RDI process was intended to be a speedy, inexpensive alternative to litigation, it has proven to be anything but, with BLM frequently taking over a decade to process the State's requests. As demonstrated on the following table, BLM has typically taken six to ten years, or more, to issue RDIs to State-owned submerged lands.[3]

| Submerged Lands: | RDI application submitted: | RDI granted: |
| --- | --- | --- |
| Deep Creek | September 21, 2005 | December 8, 2014 |
| Jim Lake | September 21, 2005 | March 27, 2012 |
| Kantishna River | September 21, 2005 | May 18, 2016 |
| Lake Minchumina | September 21, 2005 | May 6, 2016 |
| Muddy River | September 21, 2005 | May 18, 2016 |
| Scottie Creek | January 27, 2006 | April 20, 2012 |
| Aniak River and Aniak Lake | March 10, 2006 | June 12, 2012 |
| George River | March 10, 2006 | March 27, 2012 |

---

[3] Table data from https://dnr.alaska.gov/mlw/paad/nav/rdi/ (last visited February 28, 2022).

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 3 of 22

| | | |
|---|---|---|
| Kuskokwim River | March 10, 2006 | June 12, 2013 (partial)<br><br>January 18, 2022 (partial) (following Interior Board of Land Appeals order) |
| Tanana River | March 10, 2006 | April 22, 2015 |
| Whitefish Lake | March 10, 2006 | June 12, 2012 |
| Kanektok River, Pegati Lake, Kagati Lake | February 28, 2012 | September 18, 2018 |
| Kisaralik River and Kisaralik Lake | November 30, 2010 (amended August 21, 2012) | January 29, 2018 (partial) February 2, 2018 (partial) |
| Chisana River | October 4, 2015 | October 18, 2016 |
| Arolik River | September 15, 2016 | Pending |
| Goodnews River | September 15, 2016 (amended January 2, 2018) | Pending |
| Eek River system | January 4, 2018 | Pending |
| West Fork Dennison and Dennison Fork of the Fortymile River | February 20, 2019 | Pending |
| Kwethluk River | February 21, 2019 | Pending |
| Delta River system | May 14, 2019 | Pending |

It is against this backdrop that the State has initiated the instant action.

## FACTUAL AND LEGAL BACKGROUND

The State seeks to quiet title to submerged lands under navigable portions of the

Middle Fork of the Koyukuk River, the Bettles River, and the Dietrich River (the

"Subject Waters"). These waters have been used, and were susceptible of being used, in

their natural and ordinary condition, as highways of commerce, over which trade and

travel are or may have been conducted in the customary modes of trade and travel on

water before Alaska became a state in 1959, and continued in that condition through the

*State of Alaska v. United States*                     Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss       Page 4 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 4 of 22

time of statehood. ECF No. 9, ¶ 16 ("Am. Compl."). The Equal Footing Doctrine of the U.S. Constitution guarantees to newly-admitted states the same rights enjoyed by the original thirteen states and other previously-admitted states. *Utah v. United States*, 482 U.S. 193, 196 (1987); *Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989). This includes title ownership to lands underlying navigable and tidally influenced waters. *Utah*, 482 U.S. at 196. Congress codified the Equal Footing Doctrine, in part, with the Submerged Lands Act of 1953, which expressly vested in the states "title to and ownership of lands beneath navigable waters within the boundaries of respective States." 43 U.S.C. § 1311(a) (2012). Congress extended applicability of the Submerged Lands Act to Alaska in the Alaska Statehood Act. Pub. L. 85-508, § 6(m), 72 Stat. 339 (1958) (codified at 48 U.S.C. note prec. § 21).

Unless a valid pre-statehood withdrawal clearly included the submerged lands and evinced an unambiguous intent to defeat the State's statehood title, the State was granted ownership of the submerged lands by operation of law at statehood. *See United States v. Holt State Bank*, 270 U.S. 49, 55 (1926) (citing *Shively v. Bowlby*, 152 U.S. 1, 49, 57, 58 (1894)). Here, Congress has made no pre-statehood withdrawal that would defeat the State's title to the submerged lands below the Subject Waters. Am. Compl. ¶ 20. Thus, the State's title to the submerged lands vested at statehood on January 3, 1959 by operation of the Equal Footing Doctrine, the Submerged Lands Act, and the Alaska Statehood Act.

Despite the State's title to the submerged lands underlying the Subject Waters having vested at statehood, the United States, through the BLM, has failed to acknowledge the State's ownership. Instead, the United States has claimed that the Subject Waters are non-navigable, and hence did not convey to the State. Specifically, the Alaska State Office of the BLM issued an administrative decision purporting to find that the Subject Waters are non-navigable on March 16, 2011. ECF No. 11-2. This erroneous BLM decision regarding the navigability of the Subject Waters, and hence the ownership of the underlying submerged lands, cast a cloud on the rights and title of the State. With this action, the State seeks to remove that cloud.

## STANDARD OF REVIEW

Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing 2 James Wm. Moore *et al.*, *Moore's Federal Practice* 12.30[4], at 12-38 to 12-41 (3d ed. 1999)). When, as here, the defendant brings a facial attack on the subject matter jurisdiction of the court, the court resolves the question in the same way that it would a motion to dismiss under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). That is, in reviewing a facial Rule 12(b)(1) motion, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009); *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000) ("favorably viewing facts alleged to support jurisdiction").

*State of Alaska v. United States*                        Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                        Page 6 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 6 of 22

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 562, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 678-679. However, the reviewing court must take the factual allegations in the plaintiff's complaint as true. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Moreover, the reviewing court is to construe the pleading in the light most favorable to the plaintiff, and is to resolve all doubts in the plaintiff's favor. *See Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738 (1976).

## ARGUMENT

I. **The United States has asserted an interest in the Bettles River; therefore, "disputed" title exists sufficient to confer jurisdiction.**

In its first argument, the United States attempts to shield itself from suit by invoking the Ninth Circuit's holding regarding the Black River in the *Kandik, Nation, & Black Rivers* case. ECF No. 11 at 10-13. In that case, the Ninth Circuit held that the State had not established jurisdiction insofar as the case involved the Black River because ownership of that river purportedly was not in dispute. *Kandik, Nation, & Black Rivers*, 201 F.3d at 1164-1165. There, the court held that because the Quiet Title Act "requires that title be 'disputed,' there must be a dispute between the United States and the plaintiff in the Quiet Title Act suit." *Id.* (citing *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191-1192 (9th Cir. 1999)). As a result, the court, begrudgingly, dismissed the State's

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 7 of 22

claim to the Black River, essentially allowing the United States to plead ignorance to the ownership of the lands to avoid litigation.[4] *Id*. ("The district court's concerns about the federal 'dog in the manger' posture are well taken. But the statutory language as construed in *Leisnoi* nevertheless leaves the district court without jurisdiction to quiet title in the Black River.").[5] Here, this Court is not presented with the same situation and the United States' reliance on *Kandik, Nation, & Black Rivers* is misplaced.

With its March 16, 2011 determination, BLM purported to determine navigability for lands within Townships 32 and 33 North, Range 10 West, Fairbanks Meridian. ECF No. 11- at 1 ("you requested a navigability determination for lands within Tps. 32 and 33 N., R. 10 W., Fairbanks Meridian (FM), Alaska"); *id.* at 6 (depicting report area). These lands include the subject segment of the Bettles River. *See* Am. Compl. ¶ 14;

---

[4] Following the Ninth Circuit's dismissal of the Black River from the *Kandik, Nation, & Black Rivers* case, BLM granted the State an RDI covering the Black River. *See* https://dnr.alaska.gov/mlw/paad/nav/rdi/ (last visited February 28, 2022).

[5] The State fundamentally disagrees with the Ninth Circuit's holding regarding the Black River, and believes it implausible that Congress intended to allow the United States to avoid title disputes, indefinitely, simply by claiming no knowledge of the ownership of the lands. Indeed, it defies reason to conclude that Congress contemplated, let alone intended, that the United States could avoid suits to quiet title perpetually through intentional inaction, to the point that virtually all potential witnesses with first-hand knowledge are deceased. *See Kandik, Nation, & Black Rivers*, 201 F.3d at 1160 ("Someone who used one of these rivers in 1959 at age 20 is now 60 [in January 2000]. The population in the area was so sparse at all relevant times—probably no more than a couple of hundred people who might have used the three rivers during the relevant time, most too young to have relevant knowledge or too old to have survived the forty years since statehood—that a few deaths by old age can remove most or all the knowledgeable witnesses."). "Congress must have meant to empower state governments to eliminate clouds on their claimed title to state lands, yet it would have accomplished very little indeed if the United States could obtain a dismissal of any state quiet title suit by adopting a litigation position of refusing to state whether it asserted a claim or not." *Id.* at 1161

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 8 of 22

Am. Compl. at Ex. 2 (depicting disputed river segment). Based on BLM's review, it concluded that "the Middle Fork of the Koyukuk River is nonnavigable upstream of the Hammond River." ECF No. 11-2 at 5. The confluence of the Hammond River and Middle Fork of the Koyukuk River marks the downstream limit to the State's claims in this case. That is, the State claims ownership of submerged lands upstream from that confluence to include portions of the Bettles River, all of which were included in BLM's report area and navigability determination "upstream of the Hammond River." Although the report does not explicitly discuss the Bettles River, it is clearly included within the report area.

Additionally, "the Quiet Title Act 'does not require that the United States communicate its claim in clear and unambiguous terms.'" *Kandik, Nation, & Black Rivers*, 201 F.3d at 1164 (quoting *California ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir. 1985)).[6] Here, the United States has asserted ownership of the Bettles River during its land use planning process, which further demonstrates its position regarding the non-navigability of the Bettles River. The Bettles River is located within BLM's Central Yukon planning area. Associated with its land management plan amendment process, BLM evaluated the Bettles River in its Wild and Scenic Rivers Inventory. *See* BLM, Wild and Scenic Rivers Inventory, Central Yukon

---

[6] *Yuba Goldfields* addressed the Quiet Title Act's twelve-year limitations period, so is not directly on point. Nonetheless, the court's statement regarding the specificity of the United States' interest is relevant beyond statute of limitations questions.

Resource Management Plan, 15 (Oct. 2018).[7] In that inventory, BLM found the Bettles River eligible for inclusion within the Wild and Scenic River system. *Id.* at 14-15. Importantly, BLM's eligibility "review was *limited to rivers that the BLM administers*." *Id.* at 4 (emphasis added) (citing BLM Manual 6400-3.1).

In other words, per the BLM's own guidance, it could not include the Bettles River in the Wild and Scenic River system unless it considers itself to "administer" that river. However, federal administration does not extend to the submerged lands underlying navigable waters conveyed to the State. *Sturgeon v. Frost*, 585 U.S. ___, 139 S.Ct. 1066, 1078-1079 (2019) (holding that title to submerged lands underlying navigable river within conservation system unit vested in the State of Alaska, not the United States, under the Equal Footing Doctrine). Thus, pursuant to *Sturgeon*, BLM cannot "administer" State-owned submerged lands within Wild and Scenic River corridors.[8] Logically, if BLM asserts that it *does* administer the Bettles River in its Wild and Scenic Rivers Inventory, then it follows that BLM must also be asserting federal ownership of the submerged lands under that river. Otherwise, BLM could not consider the Bettles River for possible inclusion in the Wild and Scenic Rivers system. Accordingly, BLM's

---

[7] *Available at:* https://eplanning.blm.gov/public_projects/35315/200040776/20039518 /250045713/Central%20Yukon%20RMP%20WSR%20Inventory%20Report.pdf (last visited Feb. 28, 2022).

[8] The Alaska National Interest Lands Conservation Act defines "conservation system units" to include Wild and Scenic River corridors. 16 U.S.C. § 3102(4) ("'conservation system unit' means any unit in Alaska of the . . . National Wild and Scenic Rivers System[]").

Wild and Scenic Rivers Inventory belies the United States' position and this Court should deny the motion.

## II. The Quiet Title Act's "Indian lands" exception does not apply to submerged lands underlying Alaska Native allotments.

The United States next asserts that the State's claims for submerged lands "located adjacent to or within two Alaska Native allotments" should be dismissed for lack of subject matter jurisdiction. ECF No. 11 at 13-14. In doing so, the United States relies on the "Indian lands" exception to the Quiet Title Act, which provides that "[t]his section does not apply to trust or restricted Indian lands." 28 U.S.C. § 2409a(a). The United States then discusses a number of cases purportedly supporting its argument. ECF No. 11 at 13-14. Notably absent from the United States' discussion, however, is any mention of the Ninth Circuit opinion directly on point that rejected the United States' argument.

In its Motion, the United States directs this Court's attention to seven cases, each is inapposite.[9] None of the cases discussed by the United States dealt with quieting title to submerged lands granted the State upon statehood. Accordingly, the United States reliance on these cases is misplaced. Curiously, the United States does not discuss at all

---

[9] *United States v. Mottaz*, 476 U.S. 834 (1986) addressed a situation seeking to quiet title to uplands located within a National Forest. *Alaska v. Babbitt*, 38 F.3d 1068 (9th Cir. 1994) (*Albert*), concerned highway rights-of-way, as did *Alaska v. Babbitt*, 75 F.3d 449 (1996) (*Foster*), and *Alaska v. Babbitt*, 182 F.3d 672 (9th Cir. 1999) (*Bryant*). *Wildman v. United States*, 827 F.2d 1306 (9th Cir. 1987), involved uplands adjacent to a river system, but did not include submerged lands. *Alaska Department of Natural Resources v. United States*, 816 F.3d 580 (9th Cir. 2016), dealt with quieting title to an RS2477 right-of-way. Finally, *Shade v. U.S. Department of Interior*, No. 3:20-cv-0198-HRH, 2021 WL 4234928 (D. Alaska, Sept. 16, 2021), addressed a private right-of-way easement.

*State of Alaska v. United States*                                      Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss          Page 11 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 11 of 22

the Ninth Circuit opinion specifically addressing whether the Quiet Title Act's "Indian lands" exception applies to Alaska Native allotments such as the Etalook and Harwood Allotments. In the *Kandik, Nation, & Black Rivers* case, the Ninth Circuit squarely rejected the identical argument made by the United States.

There, the United States argued that because the Quiet Title Act does not permit suit against it to quiet title with respect to "trust or restricted Indian lands," the district court erred in not entering a judgment excluding such lands. *Kandik, Nation, & Black Rivers*, 201 F.3d at 1165. In disposing of the argument, the Ninth Circuit held:

> A "colorable" claim that land is Indian trust or restricted land defeats Quiet Title Act jurisdiction, but a claim that is not even "colorable" does not. *There can be no Indian lands in the bed of a navigable river, because such underwater lands as a matter of law were held in trust for the state by the United States prior to statehood, and passed to the State of Alaska on statehood. The Alaska Native Allotment Act did not reserve title to submerged lands for future allotment awards. Lands granted as Native allotments exclude lands under navigable waters.*

> There being no colorable claim to any Indian lands in the beds of the Kandik and Nation Rivers, the district judge did not err in rejecting the United States' proposed language in the judgment.

*Id.* (citations omitted) (emphasis added); *see also Bryant*, 182 F.3d at 675 (Indian lands exception requires a "colorable claim").

The United States' discussion of meander-lines[10] and its invocation of the centerline presumption in an attempt to manufacture a "colorable claim" are legally

---

[10] Neither the Etalook Allotment nor the Harwood Alltoment included within their legal descriptions the beds of the Middle Fork of the Koyukuk River (for the Etalook Allotment) or the Dietrich River (for the Harwood Allotment). *See* ECF Nos. 11-3, 11-6 (conveying lots 1 and 2 of their respective surveys); see also ECF No. 11-4 (Etalook Allotment survey) (neither lots 1 or 2 include the bed of the Middle Fork of the Koyukuk River); ECF No.

infirm. *See* ECF No. 11 at 14-15. As the United States notes, when property conveyed abuts a non-navigable water, the conveyance may be presumed to include the submerged lands up to the thread of the waterway. *Id.* at 15. The United States errs in applying this presumption, however, for two related reasons. First, the presumption applies only to non-navigable waters. *See* Alaska Stat. § 09.25.040(4) (applicable to "water not navigable"); *Montana v. United States*, 450 U.S. 544, 551 (1981) ("Though the owners of land riparian to *nonnavigable* streams may own the adjacent riverbed, conveyance by the United States of land riparian to a *navigable* river carries no interest in the riverbed." (emphasis in original) (citing *Packer v. Bird*, 137 U.S. 661, 672 (1891)). Here, the crux of the State's case is that the disputed segments of the Middle Fork of the Koyukuk River and the Dietrich River are navigable-in-fact. Therefore, on its face, the presumption does not apply in this matter. Second, the presumption is rebutted by evidence that the grantor does not own the bed of the submerged lands. Alaska Stat. § 09.25.040(4) (presumption may apply "except where the . . . bed of the stream is held under another title"). Obviously, a grantor cannot convey property that it does not own. Because title to the submerged lands conveyed to the State in 1959 at statehood, the United States had no interest to grant to Mr. Etalook in 1975 or to Mr. Harwood in 2003. This result comports with the above-cited Supreme Court and Ninth Circuit precedent.

---

11-7 (Harwood Allotment survey) (neither lots 1 or 2 include the bed of the Dietrich River). The State recognizes that these legal descriptions are based upon meander-lines and do not denote the actual legal boundary of the parcels conveyed, which in this case is the ordinary high water mark.

*State of Alaska v. United States*  Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss  Page 13 of 22

Case 3:21-cv-00221-SLG  Document 12  Filed 03/04/22  Page 13 of 22

Although the United States' argument might be saved by a prestatehood reservation that evinced an intent to defeat state title, no such reservation exists relevant to this case. Under the Property Clause, "the Federal Government could defeat a prospective State's title to land under navigable waters by a prestatehood conveyance of the land to a private party for a public purpose appropriate to the Territory" or by a federal reservation of the land. *Utah Div. of State Lands v. United States*, 482 U.S. 193, 197, 201-202 (1987). However, in *Kandik, Nation, & Black Rivers*, the Ninth Circuit held, unequivocally, that the Alaska Native Allotment Act did not contain such a prestatehood reservation. *Kandik, Nation, & Black Rivers*, 201 F.3d at 1165 ("The Alaska Native Allotment Act did not reserve title to submerged lands for future allotment awards."). Here, both the Etalook and Harwood Allotments were granted under the same statutory regime that was considered by the Ninth Circuit, *i.e.*, the Alaska Native Allotment Act. *See* ECF No. 11-3 (Etalook Alloment) (allotment issued "pursuant to the said Act of May 17, 1906 [the Alaska Native Allotment Act, 34 Stat. 197 (May 17, 1906)]"); ECF No. 11-6 (Harwood Allotment) (allotment issued "pursuant to the Act of May 17, 1906"). Therefore, the Ninth Circuit's holding that "no colorable claim" exists to defeat Quiet Title Act jurisdiction to submerged lands based upon the Alaska Native Allotment Act is controlling in this case. The United States' Motion is spurious and must be denied.

*State of Alaska v. United States*                                    Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss          Page 14 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 14 of 22

**III.    The State's Declaratory Judgment Act claim is appropriate.**

The United States next argues that the State's Declaratory Judgment Act claim[11] should be dismissed as an "end run" around the Quiet Title Act's limits on jurisdiction.[12] ECF No. 11 at 16-17. This argument appears to only apply to the State's claims to submerged lands under the Bettles River and submerged lands adjacent to the Etalook and Harwood Allotments). *Id.* at 17 ("the State has failed to prove jurisdiction over the Subject Waters of the Bettles River and land adjoining the two Native allotments for both its claims and the claims should be dismissed"). This argument is premised upon the Court's finding in favor of the Motion's first two arguments. As noted above, however, the United States first two arguments are legally infirm and must be rejected. The State properly included the Bettles River in this action and the Native Alaska Allotments did not divest this Court of jurisdiction under the "Indian lands" exception. Accordingly, this

---

[11] In its Amended Complaint, the State asserts two claims for relief. The first, under the Declaratory Judgment Act, seeks a declaration from this Court that "the Subject Waters were navigable in fact, or susceptible to navigation, at the time of statehood, and remain so today." Am. Compl. ¶ 30. The State also seeks a declaration that "no pre-statehood withdrawal in effect at the time of statehood defeated the State's interest in Subject Submerged Lands." *Id.* ¶ 31. The State's second claim for relief arises under the Quiet Title Act, and seeks an order "quieting title to the Subject Submerged Lands." *Id.* ¶ 35.

[12] As a matter of course, plaintiffs, including the State, frequently plead Declaratory Judgment Act claims in conjunction with Quiet Title Act claims, without challenge from the United States. For example, in *Alaska v. United States*, Case No. A93-0437-CV (JKS) (D. Alaska, filed Nov. 9, 1993) (*Kandik, Nation, & Black Rivers*), the State included both claims for relief. Likewise, in *Alaska v. United States*, Case No. 3:12-cv-0114-SLG (D. Alaska, filed June 1, 2012) (*Mosquito Fork of the Fortymile River*), the State pleaded under both statutes. *But see Alaska v. United States*, Case No. 3:17-cv-0090-HRH (D. Alaska, filed Apr. 19, 2017) (*Knik River*) (State pleaded under Quiet Title Act only); *Alaska v. United States*, Case No. 3:18-cv-0265-HRH (D. Alaska, filed Nov. 8, 2018) (*North Fork and Middle Fork of Fortymile River*) (Quiet Title Act only).

Court should also reject the United States' dependent argument regarding the Declaratory Judgment Act.

## IV. The United States misapplies pleading requirements; the State's factual assertions were properly pleaded.

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of the legal argument. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed. 2004 and Supp. 2010). Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A plaintiff must show that success on the merits is more than a "sheer possibility." *Id*. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." *Id*. at 681. While legal conclusions can provide the framework of a complaint, they must be

*State of Alaska v. United States*                                    Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                    Page 16 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 16 of 22

supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

In this action, the State of Alaska and the United States do not draw on a blank canvas. Unfortunately, the State too frequently has been forced to file suit seeking a judicial order quieting title to submerged lands that the State received sixty-three years ago. This case is yet another action required because the United States refuses to acknowledge the State's ownership to its submerged lands.

After quoting the State's Amended Complaint, the United States fails to recognize that the quoted passage provides a mixed statement of fact and law. ECF No. 11 at 17-18 (quoting Am. Compl. ¶ 26). The quoted passage provides:

> The Subject Waters were navigable-in-fact as they were used or were susceptible of being used in their ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel, including, but not limited to, the following specific uses: (a) in its fluid capacity as a highway—floating of logs, use by wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes providing transportation for individuals and supplies, for subsistence and recreational guided and non-guided hunting and fishing activities, for trapping, mining and prospecting, freighting and similar purposes, related to commerce and travel; and (b) any other additional uses the State proves at trial.

Am. Compl. ¶ 26.

The United States also fails to acknowledge that the State has utilized the same, or substantially similar, language in several of its prior submerged lands cases. *See Alaska v. United States*, Case No. 3:18-cv-0265-HRH, Compl. ¶ 34 (D. Alaska, filed Nov. 8, 2018)

*State of Alaska v. United States*          Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss          Page 17 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 17 of 22

(*North Fork and Middle Fork of Fortymile River*) (identical language); *Alaska v. United States*, Case No. 3:17-cv-0090-HRH, Compl. ¶ 39 (D. Alaska, filed Apr. 19, 2017) (*Knik River*) (same); *Alaska v. United States*, Case No. 3:12-cv-0114-SLG, Compl. ¶ 37 (D. Alaska, filed June 1, 2012) (*Mosquito Fork of the Fortymile River*) (same). Each of these actions were initiated after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), yet the United States has never moved to dismiss the State's action due to a perceived pleading error. Nonetheless, in its final argument for dismissal of this action, the United States now claims that the State has failed to meet the pleading requirements laid out in *Iqbal*.

Supporting its Amended Complaint, the State provides several factual allegations. First, the State alleges that the Subject Waters "were in their natural and ordinary condition at the time of statehood." Am. Compl. ¶ 25; *id.* ¶ 16. The State also alleges that the Subject Waters "remain in their natural and ordinary conditions today." *Id.* The State next alleges that the Subject Waters were used, or were susceptible of being used in their ordinary condition, as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel. *Id.* ¶¶ 16, 26. The State supports this allegation by identifying numerous customary craft that were used before or at Alaska statehood, including: wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes. *Id.* ¶ 26. The State also expands upon the allegation that trade and travel were conducted, or were susceptible of being conducted, citing a list of activities conducted on the Subject Waters, including: floating of logs, subsistence and recreational

*State of Alaska v. United States*                          Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                Page 18 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 18 of 22

guided and non-guided hunting and fishing activities, trapping, mining and prospecting, and freighting. *Id.* These facts are well-pleaded on their face. If the State proves these facts at trial, then it will prevail on its navigability claim.

Further exposition regarding the fact that the Subject Waters remain in a natural, free-flowing condition will be the subject of expert opinion prepared by the parties during the discovery process. Likewise, disputes regarding historical use, customary craft, or current uses are also subject to expert opinion prepared during discovery. As it has done in the above referenced submerged lands cases, the State will have one or more expert hydrologists, geomorphologists, historians, boating experts, and potential others prepare detailed opinions regarding the status and use of the Subject Waters. The State anticipates that the United States will follow its past practice by submitting its own expert opinions regarding any factual dispute that it perceives.

The United States muddles the State's assertions of fact and conclusions of law to argue that the State has not gone beyond "mere conclusions." ECF No. 11 at 17-18. The argument is without merit as each of the State's allegations are assertions of fact, not mere legal conclusions. These allegations are entitled to a presumption of truth, with all reasonable inferences made in the State's favor. Moreover, these allegations meet Rule 8's pleading requirement for a "short and plain" statement. Each of these facts support the ultimate legal conclusion that the Subject Waters were navigable-in-fact at the time of statehood, and thus were conveyed to the State under the Equal Footing Doctrine of the U.S. Constitution and the Submerged Lands Act. Accordingly, the State has pleaded

*State of Alaska v. United States*                    Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                    Page 19 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 19 of 22

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Motion to Dismiss should be denied.

## **CONCLUSION**

For the foregoing reasons, the United States' Motion to Dismiss should be denied and this case be permitted to go forward. Should this Court find the State's Complaint deficient for any reason, the State respectfully requests this Court's leave to file an amended complaint.[13]

DATED this 4th day of March, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By: */s/ Ronald W. Opsahl*
   Ronald W. Opsahl (Alaska Bar No. 2108081)
   Senior Assistant Attorney General
   Department of Law
   1031 W. 4th Avenue, Suite 200
   Anchorage, AK 99501
   Telephone: (907) 269-5232
   Facsimile: (907) 279-2834
   Email: ron.opsahl@alaska.gov

   Attorney for the State of Alaska

---

[13] The United States does not oppose this Court granting leave for the State to file a second amended complaint. ECF No. 11 at 17-18.

*State of Alaska v. United States*       Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss    Page 20 of 22

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 5,566 words.

*/s/ Ronald W. Opsahl*
Ronald W. Opsahl
Senior Assistant Attorney General

*State of Alaska v. United States*                    Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                    Page 21 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 21 of 22

## CERTIFICATE OF SERVICE

I certify that on **March 4, 2022**, the foregoing **Response in Opposition to Defendants' Motion To Dismiss** was served electronically on all parties listed on the CM/ECF system.

*/s/ Christina M. Fisher*
Law Office Assistant II

*State of Alaska v. United States*                Case No.: 3:21-cv-00221-SLG
Response in Opposition to Defendant's Motion to Dismiss                Page 22 of 22

Case 3:21-cv-00221-SLG   Document 12   Filed 03/04/22   Page 22 of 22