# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>                  Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>                  Defendant. | Case No. 3:21-cv-00221-SLG |

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 11 is Defendant United States of America's *Motion to Dismiss*. Plaintiff State of Alaska filed a response in opposition at Docket 12, and the United States filed a reply at Docket 14.[1] Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

This action concerns ownership of submerged lands underlying certain portions of three rivers in northwest Alaska: the Middle Fork of the Koyukuk River, the Bettles River, and the Dietrich River (collectively, the "Subject Submerged Lands").

The Koyukuk River begins in the Endicott Mountains of the Brooks Range and flows approximately 425 miles generally southwest to meet the Yukon River

---

[1] The United States also filed a *Notice of Errata* at Docket 15 correcting an error in the case caption from its filing at Docket 14.

at the Village of Koyukuk.[2]  The portion of the river relevant to this litigation, the Middle Fork, begins at the Koyukuk's confluence with the Bettles and Dietrich Rivers and continues approximately 20 miles to the Koyukuk's confluence with the Hammond River.[3]  In 1975, the United States issued an allotment under the Alaska Native Allotment Act to Arctic John Etalook for two lots located along the Middle Fork Koyukuk (the "Etalook Allotment").[4]

The relevant portion of the Dietrich River is a tributary of the Middle Fork Koyukuk and runs approximately 23 miles from the Dietrich's confluence with Nutirwik Creek to its confluence with the Bettles River.[5]  In 2003, the U.S. Department of the Interior's Bureau of Land Management ("BLM") issued a native allotment to Theodore C. Harwood for approximately 30 acres along the eastern side of the disputed portion of the Dietrich River (the "Harwood Allotment").[6]

---

[2] Docket 9 at 4, ¶ 13 (First Am. Compl.); Docket 11 at 3.

[3] Docket 9 at 4, ¶ 13; Docket 11 at 3.  The Middle Fork of the Koyukuk River includes land within the following townships: T. 33 N., R. 10 W., Fairbanks Meridian ("F.M."); T. 32 N., R. 10 W., F.M.; T. 31 N., R. 10 W., F.M.; T. 31 N., R. 11 W., F.M.; and T. 30 N., R. 11 W., F.M.  Docket 9 at 4, ¶ 13; Docket 1-2 (Ex. 2).

[4] Docket 11 at 4; Docket 11-3.

[5] Docket 9 at 5, ¶ 15; Docket 11 at 3.  The disputed territory of the Dietrich River includes land within the following townships: T. 36 N., R. 10 W., F.M.; T. 35 N., R. 10 W., F.M.; T. 34 N., R. 10 W., F.M.; and T. 33 N., R. 10 W., F.M. Docket 9 at 5, ¶ 15; Docket 1-2.

[6] Docket 11 at 5; Docket 11-6.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 2 of 21

The 17-mile-long Bettles River is also a tributary of the Middle Fork of the Koyukuk River.[7] The relevant portion of the Bettles runs from its confluence with the Dietrich River to a point approximately five miles upstream of that confluence.[8]

In September 2010, the State of Alaska requested a navigability determination from BLM for "lands within Tps. 32 and 33 N., R. 10 W., Fairbanks Meridian (FM), Alaska," an area which encompasses large portions of the Subject Submerged Lands, including the entirety of the Subject Waters of the Bettles River.[9] In response, BLM issued a memorandum on March 16, 2011 (the "2011 BLM Memo"), in which it found that the Middle Fork Koyokuk is "nonnavigable upstream of the Hammond River" and accordingly "determine[d] the Middle Fork of the Koyukuk River within Tps. 32 and 33 N., R. 10 W., FM, to be nonnavigable."[10] The memorandum also discussed previous navigability determinations along the Middle Fork Koyokuk and noted that: "The Bettles River in Tps. 32 N., Rs. 8 and 9 W., FM, [which is upriver of the portion of the Bettles at issue in this case], was

---

[7] Docket 9 at 5, ¶ 14; Docket 11 at 3.

[8] Docket 9 at 5, ¶ 14; Docket 11 at 3. The disputed territory of the Bettles River includes land within two townships: T. 32 N., R. 10 W., F.M. and T. 33 N., R. 10 W., F.M. Docket 9 at 5, ¶ 14; Docket 1-2.

[9] Docket 11-2 at 1 ("The report area is located along the south slope of the Brooks Range near the headwaters of the Middle Fork of the Koyukuk River at the junction of the Bettles and Dietrich rivers in north-central Alaska."); *see also* Docket 11-2 at 6 (depicting area identified for navigability determination).

[10] Docket 11-2 at 5.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 3 of 21

also considered to be nonnavigable in fact. No use of the bodies of water for waterborne commerce was documented or known, either prior to, or after Statehood."[11]

In October 2018, the Central Yukon Field Office of BLM published the Wild and Scenic Rivers Inventory, which "outlines the process used to determine which rivers in the Central Yukon Planning Area meet the eligibility and suitability criteria under the [Wild and Scenic Rivers] Act."[12] The Inventory lists the Bettles, Dietrich, and Middle Fork Koyukuk Rivers as within the planning area of the Central Yukon Field Office but states that the Bettles River was "not studied in this document."[13] The Inventory states that the Dietrich River was "found to be eligible for inclusion into the Wild and Scenic Rivers System."[14] The Middle Fork Koyukuk is also identified as within the planning area of the field office but is not included on the

---

[11] Docket 11-2 at 3.

[12] U.S. Dep't of Interior, *Wild and Scenic Rivers Inventory: Central Yukon Resource Management Plan* 3 (2018), https://eplanning.blm.gov/public_projects/35315/200040776/20039518/250045713/Central%20Yukon%20RMP%20WSR%20Inventory%20Report.pdf [hereinafter "*Wild and Scenic Rivers Inventory*"]. Both parties cite the Inventory in their briefing, but neither submitted it as an exhibit; thus, the Court will take judicial notice of the Inventory because it is a government report available on the BLM website. *See* Fed. R. Evid. 201(b) (providing that a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[13] *Wild and Scenic Rivers Inventory* at 3, 10. The Inventory also initially states that the Dietrich River was not studied, but that statement appears to be erroneous as the Inventory later discusses the Dietrich River for several pages. *Compare id.* at 3, *with id.* at 27–29.

[14] *Id.* at 18.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 4 of 21

list of rivers found to be eligible for inclusion into the Wild and Scenic Rivers system.[15]

The State of Alaska initiated this action on October 5, 2021.[16]  Its Amended Complaint, filed February 4, 2022, presents two claims.[17]  In  Claim I, the State seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the waters above the Subject Submerged Lands ("the Subject Waters") "were navigable in fact, or susceptible to navigation, at the time of statehood" and that "no pre-statehood withdrawal in effect at the time of statehood defeated the State's interest in the Subject Submerged Lands."[18]  In Claim II, the State seeks to quiet title to the Subject Submerged Lands pursuant to 28 U.S.C. § 2409a.[19]

The United States filed the instant motion on February 18, 2022, asserting that this action should be dismissed because the Court lacks subject matter jurisdiction and because the State has failed to sufficiently plead its claims.[20]

---

[15] *See Wild and Scenic Rivers Inventory* at 3.

[16] Docket 1 (Compl.).

[17] Docket 9.

[18] Docket 9 at 9, ¶¶ 30–31.

[19] Docket 9 at 9–10, ¶¶ 33–35.

[20] Docket 11.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 5 of 21

# LEGAL STANDARDS

## I. Motion to Dismiss

A lack of subject matter jurisdiction necessitates dismissal under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[21] In a facial attack, "the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."[22] In a factual attack, the challenger "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court."[23] When resolving a factual attack on jurisdiction, a court may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations."[24]

A party may also seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim for which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[21] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[22] *Id.*

[23] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[24] *Safe Air for Everyone*, 373 F.3d at 1039.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 6 of 21

plausible on its face.'"[25]  Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[26]

## II. The Equal Footing Doctrine and the Submerged Lands Act

Determining title to the Subject Submerged Lands implicates the navigability of the rivers in question at the time of Alaska's admission to the Union.  Under the Equal Footing Doctrine, newly admitted states are guaranteed "the same rights enjoyed by the original thirteen States and other previously-admitted States," including "title ownership to lands underlying navigable rivers."[27]  This protection was codified in the Submerged Lands Act of 1953 and extended to Alaska in the Alaska Statehood Act of 1958.[28]  Accordingly, Alaska acquired title to submerged lands underlying navigable waters on January 3, 1959, when it became the 49th state of the Union.[29]  Title to submerged lands underlying nonnavigable waters at

---

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[26] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[27] *State of Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989) (citing *Utah Div. of State Lands v. United States*, 482 U.S. 193, 196 (1987)).

[28] Submerged Lands Act, Pub. L. No. 83-31, § 3, 67 Stat. 29, 30–31 (1953) (codified at 43 U.S.C. 1311(a)); Alaska Statehood Act, Pub. L. No. 85-508, § 6(m), 72 Stat. 339, 343 (1958) (codified as amended at 43 U.S.C. § 1301 note (Application to State of Alaska)).

[29] *Alaska v. United States*, 201 F.3d 1154, 1156 (9th Cir. 2000).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 7 of 21

the time of Alaska's statehood did not transfer to the State and instead remains in the ownership of the federal government.[30]

## III. The Quiet Title Act

In Claim II, the State seeks to quiet title to the Subject Submerged Lands.[31] The Quiet Title Act "is the 'exclusive means by which adverse claimants [can] challenge the United States' title to real property.'"[32]  The Act provides a waiver of sovereign immunity, allowing suit against the United States to "adjudicate a disputed title to real property in which the United States claims an interest."[33]  As with any waiver of sovereign immunity, "[t]he Quiet Title Act must be construed strictly."[34]

The waiver of sovereign immunity in the Quiet Title Act "does not apply to trust or other restricted Indian lands,"[35] including Alaska Native allotments.[36] Under this exception, if the United States makes a "colorable" claim that the

---

[30] *Id.*

[31] Docket 9 at 9–10, ¶¶ 33–35.

[32] *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999) (alteration in original) (quoting *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983)).

[33] 28 U.S.C. § 2409a(a); *see also Leisnoi, Inc.*, 170 F.3d at 1191.

[34] *Alaska*, 201 F.3d at 1160.

[35] 28 U.S.C. § 2409a(a).

[36] *Alaska Dep't of Nat. Res. v. United States*, 816 F.3d 580, 585 (9th Cir. 2016) (defining Alaska Native allotments as "restricted Indian lands" because they are received under the Alaska Native Allotment Act and allotment certificates contain a restraint on alienation).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 8 of 21

Case 3:21-cv-00221-SLG   Document 16   Filed 08/16/22   Page 8 of 21

disputed land is Indian trust or restricted land, the district court may not exercise jurisdiction under the Quiet Title Act.[37]  The Indian lands exception "applies whether the government is right or wrong" in its claim—that is, "judicial inquiry extends no further than 'a determination that the government had some rationale,' and that its position 'was not undertaken in either an arbitrary or frivolous manner.'"[38]

## DISCUSSION

The United States contends that the State's Amended Complaint must be dismissed for four reasons.  With regard to Claim II, which seeks to quiet title to the Subject Submerged Lands, the United States seeks dismissal because: (1) as to the relevant land underlying the Bettles River, the 2011 BLM Memo does not establish a "disputed title"; (2) as to the relevant land underlying the Middle Fork Koyukuk and the Dietrich River adjacent to the Etalook and Harwood allotments, the Indian lands exception to the Quiet Title Act bars this Court's jurisdiction; and (3) as to all of the Subject Submerged Lands, the State has failed to sufficiently plead facts as required by Rule 12(b)(6) and the Quiet Title Act.[39]  Further, because

---

[37] *Alaska v. Babbitt*, 182 F.3d 672, 675 (9th Cir. 1999).

[38] *Id.* (quoting *Alaska v. Babbitt*, 38 F.3d 1068, 1076 (9th Cir. 1994)).

[39] Docket 11 at 10–11, 17; Docket 14 at 11 (noting that "[t]he QTA requires that 'the complaint . . . set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States" (quoting 28 U.S.C. § 2409a(d))).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 9 of 21

the United States asserts that the State's Claim II must be dismissed, the United States also maintains that the Court lacks jurisdiction to hear Claim I, which seeks a declaratory judgment regarding navigability, because the Declaratory Judgment Act does not itself waive the United States' sovereign immunity.[40]

The instant motion constitutes, in part, a factual attack on jurisdiction because it relies on additional evidence to dispute the State's factual allegations: specifically, a declaration from the acting Deputy State Director, Lands and Cadastral Survey for the Alaska State Office of the BLM; the 2011 BLM Memo; information concerning the Etalook and Harwood allotments; and excerpts of the BLM 1973 Survey Manual of Instructions.[41] Here, the Court has reviewed this evidence in addition to the State's Amended Complaint when determining this motion.[42] Because jurisdiction for both claims rests upon resolution of Claim II, the Court begins its analysis with consideration of the Quiet Title Act.

## I. Claim II: Quiet Title Act

### A. Bettles River

The parties disagree as to whether the United States has claimed an interest in the Subject Submerged Lands of the Bettles River sufficient to waive sovereign

---

[40] Docket 11 at 10.

[41] *See St. Clair*, 880 F.2d at 201.

[42] *See Safe Air for Everyone*, 373 F.3d at 1039.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 10 of 21

immunity under the Quiet Title Act. The State maintains that the United States has claimed such an interest because the 2011 BLM Memo "purported to determine navigability for lands within Townships 32 and 33 North, Range 10 West, Fairbanks Meridian," an area that "include[s] the subject segment of the Bettles River."[43] Thus, the State contends, in declaring the Middle Fork Koyukuk nonnavigable upstream of its confluence with the Hammond River, the United States effectively asserted that the relevant portion of the Bettles Rivers, located upstream of that confluence, is also nonnavigable and remains titled to the federal government.[44] Further, the State asserts that the United States implicitly asserted ownership of the Bettles in the Wild and Scenic Rivers Inventory because the Inventory mentioned the Bettles as a river within the Central Yukon Field Office Boundary that was potentially eligible for inclusion in the Wild and Scenic Rivers system.[45] Because the Inventory's review was "'limited to rivers that the BLM administers,'" the State contends that "it follows that BLM must also be asserting federal ownership of the submerged lands under that river."[46]

---

[43] Docket 12 at 8–9 ("Although the report does not explicitly discuss the Bettles River, it is clearly included within the report area.").

[44] Docket 12 at 9; *see also* Docket 9 at 7, ¶ 23.

[45] Docket 12 at 9–10.

[46] Docket 12 at 10 (quoting *Wild and Scenic Rivers Inventory* at 4).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 11 of 21

By contrast, the United States asserts that it has not disputed title to the relevant portion of the Bettles River because neither the 2011 BLM Memo nor the Inventory address the navigability of the Subject Waters of the Bettles or ownership of the underlying submerged land.[47] It notes that the sections of the Bettles River discussed in the 2011 BLM memo—T. 32 N., R. 8W., F.M. and T. 32 N., R. 9 W., F.M.—are upstream of the Subject Submerged Lands and asserts that "an upstream finding of nonnavigability does not necessarily imply a waterbody is nonnavigable from that point."[48] With regard to the Wild and Scenic Rivers Inventory, the United States maintains that "'administering' a river for purposes of the Wild and Scenic Rivers Act does not necessarily require ownership of the underlying submerged lands" because the Act concerns both the management of rivers and their adjacent uplands.[49] Thus, the United States contends, the Inventory "did not endeavor to determine whether the Bettles or any other river was navigable and did not consider or discuss ownership of submerged lands."[50]

The Court finds that the United States has claimed an interest in the relevant portion of the Bettles River sufficient to establish disputed title for purposes of the Quiet Title Act. "[T]o satisfy the 'disputed title' element of the QTA, a plaintiff must

---

[47] Docket 11 at 11–12; Docket 14 at 5–7.

[48] Docket 11 at 11–12 (citing *PPL Mont., LLC v. Montana*, 565 U.S. 576, 594 (2012)).

[49] Docket 14 at 5.

[50] Docket 14 at 5.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 12 of 21

show that the United States has either expressly disputed title or taken action that implicitly disputes it."[51]   Here, the State requested that BLM determine the navigability of waters within "lands within Tps. 32 and 33 N., R. 10 W., Fairbanks Meridian (FM), Alaska," which includes the entirety of the Subject Waters of the Bettles.[52]   The BLM explicitly determined that the Middle Fork of the Koyukuk is nonnavigable upstream of its confluence with the Hammond River—a statement that the United States appears to implicitly acknowledge means that the Dietrich River, as a tributary located upstream of the Middle Fork Koyukuk, is also nonnavigable.[53]   Indeed, the United States explicitly states in its briefing that it disputes the State's contention that the Dietrich River is navigable, despite the fact that the Dietrich is not referenced in the 2011 BLM Memo apart from the memo's initial description of the report area.[54]   The Court fails to see how this logic does not extend to the Subject Submerged Lands of the Bettles River, which is also a tributary of the Middle Fork Koyukuk located upstream of the Hammond confluence and is located within the report area of the 2011 BLM memo.[55]   The Court does

_____

[51] *Kane County, Utah v. United States*, 772 F.3d 1205, 1212 (10th Cir. 2014).

[52] Docket 11-2 at 1, 6; *see also* Docket 1-2 (depicting area studied in memo).

[53] *See* Docket 11-2 at 5; Docket 11 at 10–13 (failing to argue that the United States has not claimed an interest in the Dietrich River).

[54] Docket 11 at 8 (stating the United States "disputes Alaska's contention that the [Middle Fork Koyukuk and Dietrich] rivers are navigable"); Docket 11-2 at 1.

[55] *See* Docket 11-2 at 1.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 13 of 21

not reach the parties' arguments regarding the Wild and Scenic Rivers Inventory as the 2011 BLM Memo is sufficient to show that the United States has claimed an interest in the Subject Submerged Lands of the Bettles River.

## B. Middle Fork Koyukuk and Dietrich Rivers

The parties appear to agree that the United States has claimed an interest in the Subject Waters of the Middle Fork Koyukuk and Dietrich Rivers for purposes of the Quiet Title Act. However, the United States maintains that this action should be dismissed as to the portions of those rivers that adjoin the Etalook and Harwood allotments ("the Allotment Submerged Lands") due to the Indian Lands exception to the Quiet Title Act.[56] The United States explains that "there is a colorable claim that the submerged lands adjacent [to the allotments] are 'restricted Indian lands'" because the allotments "are located next to rivers that may be nonnavigable."[57] If the rivers were nonnavigable at statehood, ownership of the Allotment Submerged Lands remained with the federal government at that time and thus transferred to Etalook and Harwood when they received their allotments from the United States.[58]

---

[56] Docket 11 at 10, 13–16.

[57] Docket 11 at 13–14.

[58] *See United States v. Otley*, 127 F.2d 988, 995 (9th Cir. 1942) ("Since each patent by its terms thus shows at one of its boundaries the admittedly non-navigable lake, it transfers the land to the center of the lake."); *Bentley Fam. Tr., Bank of Cal. v. Lynx Enters., Inc.*, 658 P.2d 761, 763 n.3 (Alaska 1983) (referencing the "rule that riparian owners along nonnavigable streams own all the land underneath the stream up to the center or thread of the stream"); Alaska Stat.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 14 of 21

The State disagrees, pointing to *Alaska v. United States*, 201 F.3d 1154 (9th Cir. 2000), a case in which the State of Alaska sought to quiet title to submerged lands underlying the Kandik and Nation Rivers and the United States similarly asserted that the Indian lands exception barred jurisdiction.[59] There, the Ninth Circuit held that the exception did not apply because the rivers were navigable at statehood and the United States thus had "no colorable claim" that the disputed land was Indian trust or restricted land.[60] The State maintains that the circumstances here are analogous because the Subject Waters of the Middle Fork Koyukuk and Dietrich Rivers were navigable at statehood and thus "title to the submerged lands conveyed to the State in 1959" and "the United States had no interest to grant to Mr. Etalook in 1975 or to Mr. Harwood in 2003."[61]

This argument, as the United States points out, is circular; it assumes the navigability of the Subject Waters, but navigability is the very question that the Court lacks jurisdiction to adjudicate if the Indian lands exception applies.[62] In *Alaska v. United States*, by contrast, the Kandik and Nation Rivers had already

_____

§ 09.25.040(4) (2022) (providing that when a nonnavigable stream of water marks the boundary of a conveyance of real property, "the rights of the grantor to . . . the thread of the stream are included in the conveyance").

[59] Docket 12 at 12 (citing *Alaska*, 201 F.3d at 1165).

[60] *Alaska*, 201 F.3d at 1165.

[61] Docket 12 at 13.

[62] *See* Docket 14 at 7.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 15 of 21

been determined to be navigable at statehood by the district court and an administrative law judge.[63]

By its plain terms, the Indian lands exception would appear to apply to the Submerged Lands adjacent to the two native allotments. The United States asserts that the Allotment Submerged Lands are restricted Indian lands because the Middle Fork Koyukuk and Dietrich Rivers are nonnavigable, and this assertion does not appear to be "undertaken in either an arbitrary or frivolous manner."[64] However, apart from *Alaska v. United States*, previous cases addressing the Indian lands exception have seemingly not involved submerged lands,[65] and the Court is cognizant of the practical difficulties that may ensue as a result of carving out relatively small portions of submerged lands from a broader determination of ownership. Nonetheless, dismissal for lack of jurisdiction as to the Allotment Submerged Lands is warranted at this time.

For the foregoing reasons, the Court finds that it has jurisdiction under the Quiet Title Act to adjudicate the State's Claim II with the exception of the Allotment

---

[63] *Alaska*, 201 F.3d at 1157, 1159–60.

[64] *Babbitt*, 182 F.3d at 675.

[65] As the State identifies, the cases cited by the United States concerned rights-of-way and uplands, not submerged lands. *See* Docket 11 at 13–14; *Alaska Dep't of Nat. Res.*, 816 F.3d at 582 (rights-of-way); *Babbitt*, 182 F.3d at 673–74 (right-of-way); *Alaska v. Babbitt*, 75 F.3d 449, 450–51 (9th Cir. 1996) (right-of-way); *Babbitt*, 38 F.3d at 1070–72 (rights-of-way); *Wildman v. United States*, 827 F.2d 1306, 1307–08 (9th Cir. 1987) (uplands); *Shade v. U.S. Dep't of Interior*, Case No. 3:20-cv-0198-HRH, 2021 WL 4234928, at *4 (D. Alaska Sept. 16, 2021) (right-of-way).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 16 of 21

Case 3:21-cv-00221-SLG   Document 16   Filed 08/16/22   Page 16 of 21

Submerged Lands. The United States' motion to dismiss Claim II as to the Allotment Submerged Lands is granted without prejudice to the State renewing its claims if the Subject Waters adjacent to the allotments are determined to have been navigable at statehood.

## II. Claim I: Declaratory Judgment Act

In Claim I, the State seeks a declaratory judgement that: (1) "the Subject Waters were navigable-in-fact, or susceptible to navigation, at the time of statehood, and remain so today"; and (2) "no-prestatehood withdrawal in effect at the time of statehood defeated the State's interest in [the] Subject Submerged Lands."[66] The United States contends that this claim must be dismissed as to the Subject Waters of the Bettles River and the Allotment Submerged Lands because "the Quiet Title Act 'provides the only means by which to challenge federal ownership of real property'" and the State has not established jurisdiction under that Act.[67] Thus, in the United States' view, because the Declaratory Judgment Act by itself "does not effect a waiver of the United States' sovereign immunity," this Court lacks jurisdiction to adjudicate the State's claims for declaratory judgment.[68]

---

[66] Docket 9 at 9, ¶¶ 30–31.

[67] Docket 11 at 16 (quoting *County of Shoshone of Idaho v. United States*, 912 F. Supp. 2d 912, 943 (D. Idaho 2012)).

[68] Docket 11 at 16.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 17 of 21

Case 3:21-cv-00221-SLG   Document 16   Filed 08/16/22   Page 17 of 21

The Quiet Title Act "is the 'exclusive means by which adverse claimants [can] challenge the United States' title to real property.'"[69]  Thus, "[a] claim under the Declaratory Judgment Act may not be used as an end run around the QTA's limited waiver of sovereign immunity."[70]  Because the Court presently lacks jurisdiction over Claim II with respect to the Allotment Submerged Lands, it also lacks jurisdiction over Claim I to the extent the claim seeks declaratory judgment regarding those submerged lands.  However, the Court has jurisdiction over the remainder of Claim II, and the State can thus seek declaratory judgment as to the corresponding portions of Claim I.

## III.    Sufficiency of Pleadings

The United States also contends that the State's Amended Complaint should be dismissed in full "because its allegations on the merits consist[] of only conclusory statements and legal conclusions."[71]  It points to Paragraph 26 of the Amended Complaint, which reads:

> The Subject Waters were navigable-in-fact as they were used or were susceptible of being used in their ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel, including, but not limited to, the following specific uses: (a) in its fluid capacity as a highway—floating of logs, use by wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes providing transportation for individuals and

---

[69] *Leisnoi, Inc.*, 170 F.3d at 1191 (quoting *Block*, 461 U.S. at 286).

[70] *Alaska Dep't of Nat. Res.*, 816 F.3d at 586.

[71] Docket 11 at 17.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 18 of 21

supplies, for subsistence and recreational guided and non-guided hunting and fishing activities, for trapping, mining and prospecting, freighting and similar purposes, related to commerce and travel; and (b) any other additional uses the State proves at trial.[72]

The United States asserts that these allegations "do not go beyond 'mere conclusions'" despite "purport[ing] to identify potential 'specific uses'" of the Subject Waters because the State does not allege that the specific uses actually occurred, specify which river was used, or discuss when or how often the river was used in the manners suggested.[73]   Further, the United States maintains that the State does not meet the Quiet Title Act's heightened pleading requirement that the complaint "set forth *with particularity* the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."[74]

The State responds that Paragraph 26 "provides a mixed statement of fact and law" and contains similar language to that used in prior submerged lands cases without objection by the United States.[75]   It points to several factual allegations in its Amended Complaint regarding the use of the Subject Waters and

---

[72] Docket 9 at 8, ¶ 26.

[73] Docket 11 at 17–18.

[74] Docket 14 at 11 (emphasis in original) (quoting 28 U.S.C. § 2409a(d)).

[75] Docket 12 at 17–18.

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 19 of 21

Case 3:21-cv-00221-SLG   Document 16   Filed 08/16/22   Page 19 of 21

maintains that "[i]f the State proves these facts at trial, then it will prevail on its navigability claim."[76]

The Court finds that the Amended Complaint "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[77] The State's allegations go beyond merely reciting the legal test for navigability because they discuss the specific trade and travel uses that the State alleges the Subject Waters served or were susceptible to serving at the time of statehood.[78] The State's allegations are also sufficient under the Quiet Title Act's elevated pleading standard. The Amended Complaint sets forth with particularity the parameters of the Subject Submerged Lands, the manner in which the State purports to have acquired title to those lands (via the Equal Footing Doctrine upon statehood due to the navigability of the Subject Waters), and the interests explicitly and implicitly claimed by the United States in the 2011 BLM Memo.[79] Thus, dismissal is not warranted under Rule 12(b)(6) or the Quiet Title Act.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendant's *Motion to Dismiss* at Docket 11 is DENIED in part and GRANTED in part. Claims I and II are

---

[76] Docket 12 at 18–19 (citing Docket 9 at 6, 8, ¶¶ 16, 25–26).

[77] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[78] *See* Docket 9 at 8, ¶ 26.

[79] *See* 28 U.S.C. § 2409a(d).

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 20 of 21

dismissed as to the Allotment Submerged Lands only without prejudice to the State renewing those claims if the Subject Waters adjacent to those allotments are determined to have been navigable at statehood.  In all other respects, the motion to dismiss is DENIED.

The parties shall meet and confer **within 14 days of the date of this order** for purposes of jointly completing a Scheduling and Planning Conference Report. The report must conform to the Court's form, which is available online in Microsoft Word format on the Court's public website: http://www.akd.uscourts.gov.[80] **Within 21 days of the date of this order**, counsel for the State shall serve and file the parties' report with the Court.  In the event the parties are already actively engaged in settlement negotiations, counsel for the State shall so advise the Court **within 7 days of the date of this order**, and shall specify the date by which the parties expect to conclude their settlement negotiations.

DATED this 15th day of August, 2022 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[80] At the website, choose the "Forms" tab, select "Local Forms," and scroll down to "Civil Form 26(f) (All Judges)."

Case No. 3:21-cv-00221-SLG, *State of Alaska v. United States*
Order re Motion to Dismiss
Page 21 of 21